UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ELMER KELLAR                                    CIVIL ACTION

VERSUS                                          NO:  21-2045

UNION PACIFIC RAILROAD                          SECTION: "S" (4)
COMPANY

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment** (Rec. Doc. 49)

filed by defendant Union Pacific Railroad Company is **DENIED**.

## I. FACTUAL BACKGROUND

Plaintiff, Elmer Kellar, is suing his employer, Union Pacific Railroad Company

("UPRR"), under the Federal Employer's Liability Act ("FELA"), for injuries he suffered when

he drove his car off the road while on his way home minutes after clocking out on January 17,

2021, allegedly due to having fallen asleep at the wheel.

The following facts are undisputed. Elmer Kellar worked as a carman in the UPRR

mechanical department. A carman performs repairs and inspections of railcars. On January 16,

2021, Kellar voluntarily added his name to the overtime board, indicating that he was willing

and able to work overtime. He then worked a 16-hour double shift from 6:00 a.m. on January 16

to 2:00 p.m. on January 17, 2021. He worked entirely in the repair-in-place facility at the UPRR

railyard under "blue signal" protection. "Blue signal protection" locks out a track preventing the

movement of trains, railcars, or other rolling stock into or out of a track.

At approximately 2:00 p.m. on January 17, 2021, Kellar ended his shift and clocked out.

He then went to his car, got in, and drove over railroad tracks near the exit of the UPRR Livonia

Yard, exited the Livonia yard, and turned left onto Louisiana Highway 77. Within two minutes

of departing the railyard, Kellar missed a curve in Louisiana Highway 77 and ran off the road

into farm equipment, suffering injuries. Kellar does not remember the accident; the last thing he

remembers is "being on the way home."

Kellar has sued UPRR under the FELA arguing that UPRR was negligent in failing to

provide a safe workplace, because on January 17, 2021 and the days preceding, he was forced to

work over the statutory 12-hour limit and/or not given the appropriate off-duty hours between

on-duty periods. He further alleges that he was covered under the Hours of Service Act ("HSA"),

which UPRR violated through its work schedule requirements on the date of the accident (and on

previous occasions), rendering UPPR per se negligent. UPRR has moved for summary judgment

dismissing Kellar's claims, arguing that it is not negligent under FELA because Kellar was not in

the course and scope of his employment when the injuries occurred, and further, that Kellar was

not covered by the HSA.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Granting a motion for summary

judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file,

and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any

material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The court must find "[a]

factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the

outcome of the suit under the governing substantive law." <u>Beck v. Somerset Techs., Inc.</u>, 882

F.2d 993, 996 (5th Cir. 1989) (citing <u>Anderson</u>, 477 U.S. 242 (1986).

If the moving party meets the initial burden of establishing that there is no genuine issue,

the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue

for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The non-movant cannot satisfy the

summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a

scintilla of evidence. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have

to submit evidentiary documents properly to support its motion, but need only point out the

absence of evidence supporting the essential elements of the opposing party's case. <u>Saunders v.

Michelin Tire Corp.</u>, 942 F.2d 299, 301 (5th Cir. 1991).

### III. APPLICABLE LAW

"FELA provides the exclusive remedy for a railroad employee injured as a result of his

employer's negligence." <u>Rivera v. Union Pac. R. Co.</u>, 378 F.3d 502, 507 (5th Cir. 2004).

Pursuant to FELA, "[e]very common carrier by railroad ... shall be liable in damages to any

person suffering injury while he is employed by such carrier ... for such injury or death resulting

in whole or in part from the negligence of any of the officers, agents, or employees of such

carrier ... ." 45 U.S.C. § 51. To prevail on a FELA claim, "a plaintiff must prove: (1) the

defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence." Weaver v. Missouri Pac. R. Co., 152 F.3d 427 429 (5th Cir. 1998).

To establish negligence under FELA, a plaintiff must prove the usual negligence elements: duty, breach, causation, and damages. Gray v. Alabama Great S. R.R. Co., 960 F.3d 212, 215–16 (5th Cir. 2020) (citing Armstrong v. Kansas City S. Ry. Co., 752 F.2d 1110, 1113 (5th Cir. 1985)). However, "[a] railroad's violation of a safety statute . . . is negligence per se." CSX Transp., Inc. v. McBride, 564 U.S. 685, 704 (citing Kernan v. American Dredging Co., 355 U.S. 426, 438 (1958)). "When a statutory duty is violated, negligence per se alleviates a plaintiff's need to prove duty and breach, requiring instead only proof of a relaxed causal relation between the injury and the defendant's violation of the statute or regulation." Pflughoeft v. Kansas & Oklahoma R.R., L.L.C., 2023 WL 8234427, at *2 (D. Kan. Nov. 28, 2023) (citing Carter v. Atlanta & St. A.B. Ry. Co., 338 U.S. 430, 434 (1949); Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994); Wilson v. Union Pac. R. Co., 56 F.3d 1226, 1229–30 (10th Cir. 1995)). Under FELA, per se negligence may be found due to a statutory violation "without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." Kernan, 355 U.S. at 433.

The HSA is a railroad safety statute. Its purpose is "to promote railroad safety by limiting the number of hours a train crew may remain on duty and by requiring railroads to provide crew members with a certain number of off-duty hours for rest between shifts." Bhd. of Locomotive

Engineers v. Atchison, Topeka & Santa Fe R. Co., 516 U.S. 152, 153–54 (1996) (citations

omitted).  "[T]he HSA provides that train employees may not remain on duty for more than 12

consecutive hours, and, having worked for that period, must be given at least 10 consecutive

hours off duty." Id. (citing 49 U.S.C. § 21103(a)). Under the HSA,

> (1) Time on duty begins when the employee reports for duty and ends when the
> employee is finally released from duty.
>
> (2) Time the employee is engaged in or connected with the movement of a train is
> time on duty.
>
> (3) Time spent performing any other service for the railroad carrier during a
> 24-hour period in which the employee is engaged in or connected with the
> movement of a train is time on duty.

 49 U.S.C. § 21103(b).

"A utility employee [is] subject to the Hours of Service Act. . . and hours of service

record keeping." 49 C.F.R. § 218.22(a). A "[u]tility employee means a railroad employee

assigned to and functioning as a temporary member of a train or yard crew whose primary

function is to assist the train or yard crew in the assembly, disassembly or classification of rail

cars, or operation of trains (subject to the conditions set forth in § 218.22 of this chapter)." 49

C.F.R. § 218.5. Utility employees are exempted from the blue signal requirement under specific

conditions, set forth in 49 C.F.R. § 218.22(c). Those conditions include when the train or yard

crew is assigned a controlling locomotive that is under the actual control of the assigned

locomotive engineer of that crew; when the locomotive engineer is in the cab of the controlling

locomotive; when the utility employee has established communication with the crew by

contacting the designated crew member on arriving at the train, and before work begins, and the

designated crew member provides notice to each crew member of the presence and identity of

the utility employee; and when the utility employee is performing one or more of the following

functions:

> Set or release handbrakes; couple or uncouple air hoses and other electrical or
> mechanical connections; prepare rail cars for coupling; set wheel blocks or wheel
> chains; conduct air brake test to include cutting air brake components in or out
> and position retaining valves; inspect, test, install, remove or replace a rear end
> marking device or end of train device; or change batteries on the rear end marking
> device or the end of train device if the change may be accomplished without the
> use of tools. *Under all other circumstances, a utility employee working on, under,*
> *or between railroad rolling equipment must be provided with blue signal*
> *protection in accordance with §§ 218.23 through 218.30 of this part.*

49 C.F.R. § 218.22(c) (Emphasis added).

## IV. ANALYSIS

### A. Hours of Service Act (HSA) Violation

The parties do not dispute that violation of the HSA establishes per se negligence under

FELA. McBride, 564 U.S. at 704. However, UPRR argues that the HSA does not apply to

Kellar, because he was a carman, a position not covered by the HSA. While UPRR

acknowledges that an exception exists when a carman acts as a "utility employee", 49 C.F.R. §

218.22, UPRR argues that because Kellar was working under blue signal protection, and he did

not conform with all of the conditions set forth in 49 C.F.R. 218.22(c), i.e., he did not officially

attach to a single crew, he cannot be considered a "utility employee". It appears to be UPRR's

position that because utility employees are exempted from blue signal requirement under certain

specific conditions, if an employee is working under blue signal protection, the employee is not a

utility employee and not covered by the HSA.

This argument is premised on a misreading of the statute. As the italicized portion above makes clear, the regulation does not prescribe conditions that must be present to qualify as a utility employee; rather, it sets forth conditions under which a utility employee for whom blue signal protection is otherwise required is exempted from blue signal protection. Utility employee is defined straightforwardly in the definitions section of the regulations as a "railroad employee assigned to and functioning as a temporary member of a train or yard crew whose primary function is to assist the train or yard crew in the assembly, disassembly or classification of rail cars, or operation of trains (subject to the conditions set forth in § 218.22 of this chapter)" – which is to say, exempt from blue signal protection in certain specific instances.

The record reflects that due to Kellar's dual work as carman and carman/utility employee between November 2020 and January 2021, UPRR trained Kellar on the General Code of Operating Rules and UPRR's CR-51 Hours of Service Manual. UPRR's reporting system documented that on November 4, 2020, Kellar received a Train Yard Air Test Certification, and on January 12, 2021, received his Hours of Service Carman/Utility Employee Certification. Both of these certifications conformed to UPRR's CR-51 Hours-of-Service Carman Utility Employee Manual subjecting utility employees to railroad operating rules and Hours-of-Service Laws. In addition, UPRR's records establish that by at least December 17, 2020, Kellar held the "Position Title" as "Car Insp[ector]-HOS [Hours-of-Service]." UPRR records also noted Kellar's Personal Pay Code during the week leading to his injury on January 17, 2021 as pay code-198. UPRR's CR-51 Hours-of-Service training manual informs that "Union Pacific Hours of Service Carman-Utility Employee daily time is recorded into UPRR's Employee Data Collections

7

System (EDCS) under personal pay code (PPC) 198-Utility Service Car-Hours of Service.

Kellar stated that during the night shift on January 16, 2021 prior to the accident, he worked in the train yard "locking tracks, coupling hoses, arming and testing End-of Train ["EOT"] devices with the train crew." Locking out tracks required manually operating railroad switches using the switch keys provided. Kellar recalled that the last two 8-hour shifts he worked were from 10:00 p.m. to 6:00 a.m. in the train yard and from 6:00 a.m. to 2:00 p.m. in the repair track ["RIP"] for a total of 16 consecutive hours.

Based on the foregoing, at a minimum, plaintiff has established a fact issue as to whether he was a utility employee covered by the HSA and whether UPRR violated the HSA.

*B. Commuter Rule*

The HSA does not create a private cause of action; rather, claims premised upon it must be enforced through FELA. UPRR contends that even if an HSA violation occurred, Kellar cannot pursue his cause of action under FELA because Kellar was off duty, off premises, and driving his own vehicle when the crash occurred. In so arguing, UPRR relies upon the "commuter rule", which holds that "as a general rule, courts have held that an employee injured while commuting to and from work is not covered by FELA." Ponce v. Ne. Illinois Reg'l Commuter R.R. Corp., 103 F. Supp. 2d 1051, 1057 (N.D. Ill. 2000) (citations omitted). The basis for the commuter rule is that FELA is designed to protect railway workers from the dangers associated with railway work, not the risks of commuting to which all passengers are exposed. See Caillouette v. Baltimore & Ohio Chicago Terminal R. Co., 705 F.2d 243, 246 (7th Cir. 1983). A key inquiry is thus whether, at the time of the injury, the employee was exposed to

8

risks to which the general public was not subject.

In this case, Kellar's alleged injury is not the result of exposure to a risk shared by the general public, but one specific to his employment with UPRR – extreme fatigue resulting from working a double shift in violation of the HSA. While it is true that Kellar's accident occurred outside the UPRR Livonia railyard two minutes after his shift ended, UPRR's breach of its duty to provide a safe workplace by allowing him to work in violation of HSA regulations occurred while Kellar was on duty, in the UPRR railyard. Such a scenario – FELA cases where the ultimate damages manifest off-site after an on-site breach – is not isolated. For instance, in Moody v. Boston and Maine Corp., 921 F2d. 1 (1st Cir. 1990), a train conductor's widow brought suit under FELA for the wrongful death of her husband from a heart attack that she alleged was caused by his stressful work schedule that violated HSA regulations. The First Circuit, applying FELA, ultimately found that while foreseeability, duty, and breach were satisfied by the HSA violation, causation could not be established, noting that twelve days elapsed between the last HSA violation and the heart attack. There was no suggestion that FELA was inapplicable because the fatal heart attack did not occur onsite and on duty; because the HSA was violated, duty was established, only causation remained to be proved.

Other examples where FELA claims have been brought when damages manifested off-site after an on-site breach abound. The most obvious are those where a latent injury manifests post-employment caused by exposures during employment. See, Marburg v. Union Pac. R.R. Co., 2021 WL 1893222, at *1 (D. Neb. May 11, 2021) (employment ended 1999, adenocarcinoma diagnosed 2015 actionable under FELA); Urie v. Thompson, 337 U.S. 163

(1949) (silicosis manifesting years after exposure actionable under FELA); <u>Consol. Rail Corp. v.</u>

<u>Ray, ex rel. Boyd</u>, 693 F. Supp. 2d 39, 42 (D.D.C. 2010), <u>aff'd sub nom.</u> <u>Consol. Rail Corp. v.</u>

<u>Ray ex rel. Est. of Boyd</u>, 632 F.3d 1279 (D.C. Cir. 2011) (mesothelioma manifesting years after

asbestos exposure). Examples also include a railroad worker who suffered a stroke after work

following an allegedly negligent work assignment, <u>Walsh v. Consol. Rail Corp.</u>, 937 F. Supp.

380 (E.D. Pa. 1996); a railroad worker's myocardial infarction alleged to have been caused by

HSA violations while on duty, <u>Welby v. Consol. Rail Corp.</u>, 671 F. Supp. 1015 (M.D. Pa. 1987);

and railroad workers who developed Lyme disease after being exposed to ticks while working on

signaling equipment, <u>Grano v. Long Island R. Co.</u>, 818 F. Supp. 613 (S.D.N.Y. 1993). In the

instant case, while Kellar happened to be commuting when he suffered damages two minutes

after leaving the railyard, the injury – extreme fatigue – occurred while he was on-duty and

exposed him to danger not faced by the average commuter.

In summary, plaintiff has alleged negligence per se. He is thus relieved of proving duty

and breach. The issue of whether he can establish the required relaxed causal relation between

his injury and UPRR's violation of the HSA is reserved for the jury. The court thus finds that

UPRR is not entitled to summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment** (Rec. Doc. 49)

filed by defendant Union Pacific Railroad Company is **DENIED**.

New Orleans, Louisiana, this __5th__ day of January, 2024.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**