UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELMER KELLAR** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-2045** |
| **UNION PACIFIC RAILROAD COMPANY** | **SECTION: "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Union Pacific Railroad Company's **Motion in Limine to Exclude Plaintiff's Expert, Lawrence Mann, Esq.** (Rec. Doc. 48) is **GRANTED in part** and **DENIED in part** as set forth herein.

### BACKGROUND

Plaintiff, Elmer Kellar, is suing his employer, Union Pacific Railroad Company ("UPRR"), under the Federal Employer's Liability Act ("FELA"), for injuries he suffered when he drove his car off the road while on his way home minutes after clocking out on January 17, 2021, allegedly due to having fallen asleep at the wheel. Detailed facts have been set forth in prior orders of the court, and are not restated here. See Rec. Doc. 70.

Kellar alleges that UPRR was negligent in failing to provide a safe workplace, because on January 17, 2021 and the days preceding, he was forced to work over the statutory 12-hour limit and/or not given the appropriate off-duty hours between on-duty periods. He further alleges that he was covered under the Hours of Service Act ("HSA"), which UPRR violated through its work schedule requirements on the date of the accident (and on previous occasions), rendering UPPR per se negligent. UPRR moved for summary judgment dismissing Kellar's claims, arguing

that it was not negligent under FELA and that Kellar was not covered by the HSA. Finding that fact issues existed as to whether Kellar was a utility employee covered by the HSA and whether UPRR violated the HSA, the court denied summary judgment.

In the instant motion, UPRR seeks to exclude Kellar's expert, Lawrence Mann, Esq., invoking Daubert vs. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Mann characterizes his report thusly:

> All the opinions and facts stated in this report are in the specialized fields of railroad safety, the history of fatigue management in the railroad industry due to rail safety accidents and events, and railroad industry knowledge about fatigue management and the attendant safety risks presented specifically in the railroad industry. The following analysis, assessment, and/or opinions are provided to assist the trier-of-fact in the technical application of hours-of-service requirements and regulations (which are not within common knowledge outside of the railroad industry) to the facts at hand in this case specific to Mr. Kellar.[1]

Mann goes on to conclude that by allowing Kellar to work extended hours, "[b]ased upon my knowledge of safety and fatigue in the railroad industry, Union Pacific has not taken adequate safety measures to combat fatigue among employees such as Mr. Kellar and failed to do so in this specific case."[2]

In moving to exclude Mann, UPRR argues that his expert report amounts to a legal brief, consisting almost entirely of legal conclusions and the application of law to fact. UPRR further argues that Mann is unqualified to testify as an expert on railroad safety because he has never worked at a railroad; instead, he has worked as a railroad plaintiff's attorney and been involved

---

[1] Rec. Doc. 56-1, Mann Report, 25-26 ("Assessment" section).

[2] Id. at 26.

2

in drafting railroad safety regulations and legislation. UPRR posits that Mann's opinion on fatigue management regulations and their history is irrelevant, unhelpful background information, because no binding fatigue management regulations were enacted until 2022, over a year after plaintiff's accident. UPRR further claims that Mann has applied no methodology beyond asserting his own opinions on the facts of the case, and takes particular exception at his rendering a medical opinion (i.e., that Kellar suffered from disrupted circadian rhythm caused by UPRR).

Plaintiff opposes, arguing that he "primarily offers Mr. Mann as a railroad safety expert especially on the issues of Union Pacific's knowledge and foreseeability, which are relevant to the issue of Union Pacific's negligence."[3]

## APPLICABLE LAW

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. Gen. Elec. Co. v. Joiner, 118 S. Ct. 512, 515 (1997). In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589 (1993), the Supreme Court held that Federal Rule of Evidence 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." The reliability inquiry requires the court to assess whether the reasoning or methodology underlying the expert's testimony is valid. See Daubert, 509 U.S. at 591-92. The goal is to exclude expert testimony that is based merely on subjective belief or unsupported speculation. See id. at 590.

Next, the court must determine whether the expert's reasoning or methodology "fits" the

---

[3] Pltf's Opp., Rec. Doc. 56, 5.

facts of the case and whether it will assist the trier of fact to understand the evidence, i.e. whether it is relevant. See id. at 591. Pursuant to Rule 702 and Daubert, an expert's testimony must be relevant " 'not simply in the sense that all testimony must be relevant, [under Federal Rule of Evidence 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue.' " Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co., 801 F.3d 512, 529 (5th Cir. 2015) (quoting Bocanegra v. Vicmar Servs., Inc., 320 F.3d 581, 584 (5th Cir. 2003)). Thus, courts exclude expert testimony on issues that the jury can "adeptly assess ... using only their common experience and knowledge." Peters v. Five Star Marine Serv., 898 F.2d 448, 450 (5th Cir. 1990).

Federal Rule of Evidence 704 provides in pertinent part that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. However, Rule 704 does not allow an expert witness to give legal conclusions or to simply tell the jury what result to reach. Owen v. Kerr-McGee Corp., 698 F.2d 236, 239-40 (5th Cir. 1983) (citations omitted). " 'Each courtroom comes equipped with a "legal expert," called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.' " Lamar Advert. Co. v. Zurich Am. Ins. Co., 533 F. Supp. 3d 332, 341 (M.D. La. 2021) (quoting Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1213 (D.C. Cir. 1997)). Because judges, not expert witnesses, charge the jury on the law, expert testimony concerning legal standards is generally inadmissible as unhelpful to the jury. See FED. R. EVID. 702(a).

## DISCUSSION

Because relevance is the touchstone for admissibility, it is useful to identify the issues for trial. They are essentially twofold: whether UPRR was negligent in failing to provide a safe workplace to Kellar by requiring or allowing him to work unreasonably long hours; and whether UPRR was per se negligent due to a violating of Hours of Service ("HSA") provisions. The question in the instant motion is whether Mann's testimony would assist the trier of fact in resolving these issues.

With respect to the negligence claim, according to plaintiff, he "primarily offers Mr. Mann as a railroad safety expert especially on the issues of Union Pacific's knowledge and foreseeability [that fatigue would lead to Kellar's accident], which are relevant to the issue of Union Pacific's negligence."[4] Plaintiff asserts that Mann "specifically sets forth in his report the factual basis and historical record to establish that Union Pacific knew the risks fatigue posed to its employees, which made Mr. Kellar's injury foreseeable even if unexpected."[5] Further, "Mr. Mann's testimony and discussion . . . .will assist the jury in determining Union Pacific's knowledge of fatigue-related risk and the foreseeability of fatigue-related risk affecting railroad workers."[6] However, this testimony, which is concerned with UPRR's knowledge of the risks of fatigue, does not tend to prove any contested fact. UPRR has explicitly acknowledged that it "was aware that fatigue, and its relationship to its employee's duties presented safety risks at the

---

[4] Pltf's Memo in Opp., Rec. Doc. 56, 5 (emphasis added).

[5] Id. at 6 (emphasis added).

[6] Id. at 8 (emphasis added).

railroad."[7] UPRR has never disputed this point, and in fact, UPRR's corporate designee testified repeatedly to the railroad's awareness of the risk presented by fatigue.[8] Thus, there is simply no contested fact in issue that this portion of Mann's testimony tends to prove, and Mann's testimony on this point would not assist the jury in determining an issue for trial. It is therefore excluded as irrelevant. The parties may submit a stipulation to ensure that the jury is aware of this fact.

In addition, to the extent Mann's testimony amounts to an opinion on medical causation – i.e., that UPRR affected Kellar's circadian rhythm – he is not qualified to render such an opinion. Mann's report does not reference or conduct a sleep study, and he does not hold a medical degree nor has he ever worked as a sleep specialist. This testimony is also excluded.

To the extent that the gist of Mann's testimony is simply that sleep deprivation puts one at risk of falling asleep at the wheel, expert testimony is not required, because "understanding the onset and effects of fatigue falls within the jury's 'common experience and knowledge,'" Douglas v. Chem Carriers Towing, LLC, 431 F. Supp. 3d 830, 838 (E.D. La. 2019) (citing Peters, 898 F.2d at 450). "[F]atigue is widely experienced and thus its onset and effects on alertness can be commonly understood without the assistance of expert testimony." Id.

With respect to the negligence per se claim, much of Mann's testimony concerning the history of fatigue management in the railroad industry and railroad industry knowledge about fatigue management and the attendant safety risks have no bearing on the issues implicated in

---

[7] UPRR 30(b)(6) Depo. of L. Kavan, Rec. Doc. 57-10, 11).

[8] Id. at 11, 50-51.

the negligence per se claim. Plaintiff's negligence per se claim requires him to prove that he was covered by the HSA and that UPRR violated the terms of the HSA. The court will instruct the jury on the requirements of the HSA, and fact witnesses will testify to what occurred while plaintiff was on duty. Mann's appreciation of the legislative history of fatigue management regulations in the railroad industry, incorporating numerous citations to statutes, the Federal Register, House and Senate reports, etc. will simply not assist the trier of fact in making the necessary determination.

However, Mann also proposes to testify concerning "the technical application of hours-of-service requirements and regulations (which are not within common knowledge outside of the railroad industry) to the facts at hand in this case specific to Mr. Kellar." UPRR does not challenge Mann's background and qualifications to testify on this point (and in fact acknowledges it[9]). Thus, this testimony may provide expertise on a fact in issue that would be helpful for the jury. As long as Mann's testimony does not set out statements of law to an extent that it usurps the court's role, or includes matter that is within the jury's capacity and purview to determine for itself, it is admissible. Accordingly,

**IT IS HEREBY ORDERED** that Union Pacific Railroad Company's **Motion in Limine to Exclude Plaintiff's Expert, Lawrence Mann, Esq.** (Rec. Doc. 48) is **GRANTED in part**

---

[9] Rec. Doc. 64, UPRR's Reply, 1.

and **DENIED in part** as set forth herein.

New Orleans, Louisiana, this __31st__ day of October, 2024.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**